# UNITED STATES AIR FORCE COURT OF CRIMINAL APPEALS

## UNITED STATES

**v.**

## Senior Airman JAMES M. KMET
### United States Air Force

### ACM 38755

### 2 June 2016

Sentence adjudged 10 October 2014 by GCM convened at Schriever Air Force Base, Colorado. Military Judge: Brendon K. Tukey.

Approved Sentence: Bad-conduct discharge, confinement for 120 days, forfeiture of all pay and allowances during confinement and forfeiture of $1031.00 pay per month thereafter until the bad-conduct discharge is executed, and reduction to E-1.

Appellate Counsel for Appellant: Lieutenant Colonel Lucy H. Carrillo, and Captain Johnathan D. Legg.

Appellate Counsel for the United States: Captain Tyler B. Musselman and Gerald R. Bruce, Esquire.

Before

ALLRED, TELLER, and ZIMMERMAN[1]
Appellate Military Judges

OPINION OF THE COURT

<u>This opinion is issued as an unpublished opinion and, as such, does not serve as precedent under AFCCA Rule of Practice and Procedure 18.4.</u>

ALLRED, Chief Judge:

Appellant was tried at a general court-martial composed of officer members.[2] Contrary to his pleas, he was found guilty of an indecent act and abusive sexual contact, in

---

[1] Senior Judge Teller and Judge Zimmerman participated in this decision prior to their retirements.

[2] After discussing with Appellant his forum rights, the military judge prematurely announced that the court was assembled. Later, after the members were called and sworn, the judge properly announced assembly of the court.

violation of Article 120, UCMJ, 10 U.S.C. § 920. Appellant was found not guilty of indecent visual recording of another, in violation of Article 120c, UCMJ, 10 U.S.C. § 920c. The adjudged sentence was a bad-conduct discharge, confinement for 120 days, forfeiture of all pay and allowances, and reduction to E-1. The convening authority approved the adjudged sentence except that he reduced the forfeiture of all pay and allowances to "forfeiture of all pay and allowances during confinement and forfeiture of $1,031.00 pay per month thereafter until the bad conduct discharge is executed."

Before us, Appellant contends: (1) the military judge erred when he conducted trial proceedings in the absence of detailed court members; (2) the trial judge abused his discretion in admitting statements Appellant made to the victim; (3) the convening authority improperly considered statements made by the victim during the clemency process; and (4) the military judge erred in instructing the panel members. We disagree and affirm the findings and sentence.[3]

*Background*

While attending technical school in 2010, Appellant and the victim met and became good friends. By early 2011, both were assigned to the same permanent duty station. According to the victim, their relationship was never romantic, but they were very close— like "brother and sister." Eventually, they moved into a house, which they shared with others and in which they kept separate bedrooms. While they were living in the house, Appellant, at times, took photos of the victim without her permission while she was sleeping. The photos included a brief video in which Appellant, having pulled down her shorts in her darkened bedroom, touches and kisses the victim's exposed buttocks. Further facts necessary to address the assignments of error are discussed below.

---

*See* Rule for Courts-Martial (R.C.M) 911, Discussion ("When trial is by a court-martial with members, the court-martial is ordinarily assembled immediately after the members are sworn.") To the degree that the trial judge erred in announcing assembly, we find such error to be harmless.

[3] At trial, the Defense made a written motion under Mil. R. Evid 412 (Appellate Exhibit XII), the Government responded in writing (Appellate Exhibit XIII), and the military judge addressed these matters in a closed hearing. The military judge ordered the transcript of the closed hearing sealed, and pages 165–206 were properly sealed. *See* Mil R. Evid. 412(c)(3) (stating that when a court-martial addresses matters under Mil R. Evid. 412, the "motion, related papers, and the record of the hearing must be sealed and remain under seal unless the court orders otherwise."). The written motion and response were, however, not sealed. We hereby order that Appellate Exhibits XII and XIII be sealed. We order record of trial pages 222–225, wherein the military judge addresses the Mil. R. Evid. 412 motion, be sealed. We also order that the Government remove these exhibits and pages from all other copies of the record of trial, as required by Air Force Manual 51-203, *Records of Trial*, ¶ 6.3.4 (27 June 2013).

Additionally, we note that Prosecution Exhibits 1, 2, 3, 5, and 6, and Appellate Exhibits VII, XV, XIX and XL involve sensitive victim images. We order that these exhibits be sealed and removed from all but the original copy of the record of trial. *See* Air Force Manual 51-203, *Records of Trial*, ¶ 6.3 (27 June 2013).

*I. Presence of Court Members*

After challenges and excusals, trial in this case began with five court members. Government counsel made an opening statement and in doing so played the video clip in which Appellant touched and kissed the victim's exposed buttocks. The video was 38 seconds in length and had been previously admitted without objection. The Defense made its opening statement. Then, as the Government was calling its first witness, one court member disclosed that her husband had worked for the Defense Computer Forensics Laboratory (DCFL). This led to individual voir dire of the member, a Defense challenge for cause against her, and a Defense motion for mistrial based on grounds that the court member might have tainted the remaining panel. The military judge denied the motion for mistrial, but granted the Defense challenge for cause and excused the member. The Defense then moved again for mistrial, on grounds that obtaining new members and proceeding in accordance with Article 29(b), UCMJ, 10 U.S.C. § 829(b) and Rule for Courts-Martial (R.C.M.) 805(d)(1) would result in "manifest injustice." The military judge denied this motion for mistrial.

The next day, trial resumed with four new members properly detailed by the convening authority. In the absence of the original panel members, the new members received preliminary instructions and voir dire. Upon challenge, one of the four new members was excused. The opening statements of both parties to the original panel had been recorded, and these were played to the three new members, along with the 38-second video clip. The original members were then called, and trial proceeded to its conclusion with a panel of seven. Appellant argues before us now that his right to due process was violated when the military judge conducted trial sessions with new panel members in the absence of the four original members.

"The constitutionality of an act of Congress is a question of law that we review de novo." *United States v. Vasquez*, 72 M.J. 13, 17 (C.A.A.F. 2013) (quoting *United States v. Ali*, 71 M.J. 256, 265 (C.A.A.F. 2012)). To determine if "a statute is 'unconstitutional as applied,'" we conduct a fact-specific inquiry." *Id*.

Article 29(b), UCMJ, sets forth the procedure for addressing the loss of quorum at a general court-martial.

> Whenever a general court-martial, other than a general court-martial composed of a military judge only, is reduced below five members, the trial may not proceed unless the convening authority details new members sufficient in number to provide not less than five members. The trial may proceed with the new members present after the recorded evidence previously introduced before the members of the court has been read to

the court in the presence of the military judge, the accused, and counsel for both sides.

R.C.M. 805(d)(1) implements this statute as follows:

> *Members*. When after presentation of evidence on the merits has begun, a new member is detailed under R.C.M. 505(c)(2)(B), trial may not proceed unless the testimony and evidence previously admitted on the merits, if recorded verbatim, is read to the new member, or, if not recorded verbatim, and in the absence of a stipulation as to such testimony and evidence, the trial proceeds as if no evidence has been presented.

In arguing that the military judge erred by conducting sessions in the absence of previously detailed members, Appellant neither cites nor attempts to distinguish his case from *Vasquez*—the decision which is in our view controlling. As in the present case, *Vasquez* involved a general court-martial where the panel fell below five members after trial was underway, and where the trial judge, without the original members, impaneled new members and presented them with opening statements and evidence received by the original members. 72 M.J. at 16. As does Appellant now, Vasquez argued that the military judge violated his rights by proceeding in accordance with Article 29(b), UCMJ, and R.C.M. 805(d)(1).

The facts supporting Vasquez were more compelling than those favoring Appellant now. The *Vasquez* members were deep into the trial—having heard from five of the government's six witnesses—when their numbers fell below quorum. 72 M.J. at 16. Even so, our superior court upheld the conviction, finding no violation of the appellant's rights. *Id.* at 21. Observing that the military judge had "scrupulously followed the procedures established by Congress in Article 29(b), UCMJ, as implemented by the President under R.C.M. 805(d)(1)," the court held that the military judge did not abuse his discretion in declining to declare a mistrial. *Id.* at 17, 19. Rejecting any suggestion that "the statutory scheme is unconstitutional on its face," the court also found that Vasquez had not met his burden of showing that Article 29(b), UCMJ, was unconstitutional as applied to him. *Id.* at 17, 21.

Appellant's present assignment of error includes an argument that the trial judge violated R.C.M. 805(b)—which states that, absent certain exceptions, "no court-martial proceeding may take place in the absence of any detailed member." We disagree. Among the exceptions specified by R.C.M. 805(b) are instances in which any "member has been excused under R.C.M. 505 or 912(f)." Rule for Courts-Martial 505 addresses changes of court members, military judge, and counsel in general; and speaks directly to the replacement of court members when, as a result of challenges, the panel is reduced below

a quorum.  Rule for Courts-Martial 912(f) involves challenges and removal of court members for cause.  We read those provisions to allow for the absence of court members under the circumstances of Appellant's court-martial.  In doing so, we note that our superior court has pointedly rejected Appellant's implied argument that an accused has the "right to have all members be presented with all evidence in the same way." *Vasquez*, 72 M.J. at 20.

We find the present case to be distinguishable from *Vasquez* in no respect favorable to Appellant.  We find that, either directly or by necessary implication, *Vazquez* rejects all of Appellant's arguments before us.  We find that the military judge did not abuse his discretion in denying the motions for mistrial, and we find that he "scrupulously followed the procedures" established by Congress and by the President.  *See Vasquez*, 72 M.J. at 17. In so doing, he committed no error, plain or otherwise.

## *II. Admission of Statements by Appellant*

In about November 2012, the victim discovered Appellant had made photos of her without permission.  As a result of this discovery, she confronted Appellant, and then moved out of the house they shared.   In June of 2013, while attending sexual assault prevention training, the victim decided to report Appellant's misbehavior in order to protect others.

Once involved, the Air Force Office of Special Investigations (AFOSI) asked the victim to contact Appellant as part of a pretext operation.  The victim agreed, and, under AFOSI guidance, she exchanged with Appellant a series of text messages in which he incriminated himself.  During their text exchange, the victim also asked Appellant to bring his computer and meet her on-base.  He agreed, and they met at an on-base coffee shop the following day.  During this meeting, the victim wore concealed recording equipment provided by the AFOSI which captured further admissions by Appellant.  At the end of this meeting, having obtained search authorization, the AFOSI seized Appellant's laptop computer, an external hard drive, and his cell phone.  Found amongst these media were the video and other photos of victim's exposed buttocks.

At trial, the Defense did not seek to exclude admissions made by Appellant while texting the victim on the first day of their pretext encounter.  The Defense did, however, move to suppress statements he made at the coffee shop the following day, along with any evidence derived therefrom.  Defense counsel contended that, during the coffee shop encounter, the victim was acting in a law enforcement capacity and was thus required to provide rights warnings before eliciting admissions from him.  The military judge denied the motion, and Appellant now argues that he erred in doing so.

We review a military judge's ruling on a motion to suppress for an abuse of discretion.  *United States v. Jones*, 73 M.J. 357, 360 (C.A.A.F. 2014).  "When there is a

motion to suppress a statement on the ground that rights' warnings were not given, we review the military judge's findings of fact on a clearly-erroneous standard, and we review conclusions of law de novo." *Id.* Whether a questioner was acting or could reasonably be considered to be acting in a law enforcement or disciplinary capacity is a question of law requiring de novo review. *Id.* at 361. Article 31, UCMJ, 10 U.S.C. § 831, states in pertinent part:

> (b) No person subject to this chapter may interrogate, or request any statement from an accused or a person suspected of an offense without first informing him of the nature of the accusation and advising him that he does not have to make any statement regarding the offense of which he is accused or suspected and that any statement made by him may be used as evidence against him in a trial by court-martial.
>
> . . .
>
> (d) No statement obtained from any person in violation of this article, or through the use of coercion, unlawful influence, or unlawful inducement may be received in evidence against him in a trial by court-martial.

"Thus, Article 31(b), UCMJ, warnings are required when (1) a person subject to the UCMJ, (2) interrogates or requests any statement, (3) from an accused or person suspected of an offense, and (4) the statements regard the offense of which the person questioned is accused or suspected." *Jones*, 73 M.J. at 361.

In *Jones*, however, our superior court noted that cases involving undercover officials and informants involve unique considerations. The court stated, "Because undercover officials and informants do not usually place the accused in a position where a reasonable person in the accused's position would feel compelled to reply to questions, . . . logic dictates that Article 31(b), UCMJ, would not apply in those situations." *Id.* at 361, n.5. Modifying its previous ruling in *United States v. Duga*, 10 M.J. 206 (C.M.A. 1981), the *Jones* court adopted a two-prong test for determining whether statements by an accused to informants and undercover officials must be suppressed. The first prong is whether the person who conducted the questioning was "'participating in an official law enforcement or disciplinary investigation or inquiry,' as opposed to having a personal motivation for the inquiry." *Id.* at 361 (quoting *United States v. Swift*, 53 M.J. 439, 446 (C.A.A.F. 2000)). The second prong applies an objective standard of a reasonable person in the suspect's position to determine whether that person would have concluded that the questioner was acting in an official law enforcement or disciplinary capacity. *Id.* at 362.

In the present case, the military judge made detailed findings of fact and applied the *Jones* analysis. The military judge concluded that, under the first prong, the victim had indeed acted in a law enforcement capacity during her communications with Appellant. The military judge found, however, that the second prong of *Jones* had not been met. He reasoned that, given the totality of the circumstances, a reasonable person in Appellant's position would not have considered the victim to be acting in an official law enforcement or disciplinary capacity. The judge declared:

> [The victim] and Senior Airman Kmet had a long history together of being close friends. [The victim] met with Senior Airman Kmet at a public location which the two of them had frequented before under circumstances indicating their meeting as friends seeking to resolve a conflict and to give [the victim] closure. Nothing about the prior relationship between the two, the setting of the meeting or the circumstances surrounding the meeting would lead a reasonable person to believe that [the victim] was acting in an official law enforcement or disciplinary capacity. Accordingly, the Defense Motion to Suppress is hereby denied.

Having carefully reviewed the record of trial, we concur with the military judge. His findings of fact are supported by the record and are not clearly erroneous. He applied the correct law and did not abuse his discretion under the circumstances of this case. We reject this assignment of error.

### III. Clemency Statement by the Victim

Appellant argues the convening authority improperly considered prejudicial matters submitted by the victim during clemency.

Whether post-trial processing was completed properly is a question of law, which this court reviews de novo. *United States v. Sheffield*, 60 M.J. 591, 593 (A.F. Ct. Crim. App. 2004) (citing *United States v. Kho*, 54 M.J. 63, 65 (C.A.A.F. 2000)). When reviewing post-trial errors, we recognize the convening authority is an appellant's "best hope for sentence relief." *United States v. Lee*, 50 M.J. 296, 297 (C.A.A.F. 1999) (quoting *United States v. Bono*, 26 M.J. 240, 243 n.3 (C.M.A. 1988)). The convening authority, not a court of criminal appeals, is empowered to grant clemency for equitable reasons. *United States v. Nerad*, 69 M.J. 138, 145 (C.A.A.F. 2010). "Because of the highly discretionary nature of the convening authority's action on the sentence, we will grant relief if an appellant presents 'some colorable showing of possible prejudice.'" *Kho*, 54 M.J. at 65 (quoting *United States v. Wheelus*, 49 M.J. 283, 289 (C.A.A.F. 1998)); *see also United States v. Scalo*, 60 M.J. 435, 436–37 (C.A.A.F. 2005).

Article 60, UCMJ, 10 U.S.C § 860, provides the framework by which a convening authority may take action and grant clemency. The statute was recently amended to include a subsection (d) authorizing the submission of statements by the victim.[4] National Defense Authorization Act for Fiscal Year 2014, Pub. L. No. 113-66, § 1706, 127 Stat. 672, 960–61 (2013) (codified as amended at 10 U.S.C. § 860). Article 60, UCMJ, does not restrict what a victim may submit, but allows broadly:

> In any case in which findings and sentence have been adjudged for an offense that involved a victim, *the victim shall be provided an opportunity to submit matters for consideration by the convening authority* or by another person authorized to act under this section before the convening authority or such other person takes action under this section.

Article 60(d)(1), UCMJ (emphasis added).

In the present case, as part of the clemency process, the victim submitted a letter to the convening authority discussing impact to her from Appellant's crimes. Her comments included the following:

> The worst part of this whole situation is how this case was charged. Without going into anything that would be improper for me to say at this point and cause any unnecessary issues for the processing of this case I will simply say that I was not happy, despite the best efforts of my SVC, with how you and your office chose to charge and prosecute this case.

Appellant argues that this comment was improper. Appellant further argues that because he objected to this same victim comment when submitting his own clemency matters to the convening authority, the Government was obliged to redact the victim's comment or to address it as a legal matter in its Staff Judge Advocate Recommendation (SJAR).[5] We are not persuaded.

---

[4] Article 60(d)(5), UCMJ, 10 U.S.C. § 860(d)(5) defines "victim" as "a person who has suffered a direct physical, emotional, or pecuniary harm as a result of a commission of an offense under [the UCMJ]."

[5] Under R.C.M. 1106(d)(4), an SJA is obligated to

> state whether, in the staff judge advocate's opinion, corrective action on the findings or sentence should be taken when an allegation of legal error is raised in matters submitted under R.C.M. 1105 or when otherwise deemed appropriate by the staff judge advocate. The response may consist of a statement of agreement or disagreement with the matter raised by the accused. An analysis or rationale for the staff judge advocate's statement, if any, concerning legal error is not required.

We recently addressed a similar challenge in *United States v. Pheasant*, ACM S32237 (A.F. Ct. Crim. App. 16 September 2015) (unpub. op.). There, in submitting matters to the convening authority during clemency, a victim made what were arguably references to offenses for which Pheasant had not been convicted. In *Pheasant*, we held that the victim's comments were not inappropriate for consideration by the convening authority; and the staff judge advocate (SJA) neither erred in allowing the convening authority to consider the matters, nor in declining to address the errors in the SJAR.

We find that the present case is not distinguishable from *Pheasant* in any way favorable to Appellant. As noted above, Article 60(d), UCMJ, does not limit what a victim may submit to the convening authority. As sole legal authority for his claim that such limits do exist and were violated in his case, Appellant cites Air Force Instruction (AFI) 51-201, *Administration of Military Justice*, Figure 9.2, (6 June 2013) (as modified by Air Force Guidance Memorandum 2014-01 (25 September 2014)).[6] Figure 9.2 is a proposed template letter by which the SJA to the convening authority may inform victims of their right to submit matters during clemency. Appellant's theory that the template places restrictions upon the rights explicitly granted to victims by Congress is, in our view, tenuous. However, even if we accept Appellant's view that such limits do exist, we find no impropriety in any comment made by the victim in this case. The victim's generalized statement of dissatisfaction regarding the manner in which this case was charged and prosecuted violated no right of the Appellant, and indeed seems precisely the type of expression Article 60(d), UCMJ, was meant to allow.

Here—as in *Pheasant* and for the reasons stated therein—we find that the SJA did not err in presenting the victim's complete statement to the convening authority, and Appellant's post-trial submissions did not amount to an allegation of legal error requiring a response by the SJA. We find no error in the clemency process nor any "colorable showing of possible prejudice" to Appellant. *See Kho*, 54 M.J. at 65.

*IV. Instruction to Court Members*

---

[6] Figure 9.2 states in pertinent part:

> You may submit a statement in writing to [the Convening Authority's SJA] for consideration in advising the Convening Authority. The choice is entirely yours. This statement could describe the impact [Appellant's] crime had on your life. You may also discuss whether you believe the Convening Authority should approve the findings and sentence or grant some form of clemency. However, this statement should not reference any crimes for which [Appellant] was not convicted of by the court-martial in order to avoid any prejudice to [his] post-trial rights.

Air Force Instruction 51-201, *Administration of Military Justice*, Figure 9.2 (6 June 2013) (as modified by Air Force Guidance Memorandum 2014-01 (25 September 2014)).

In preliminary instructions prior to voir dire, and again before their deliberations on findings, the military judge gave the court members the standard Air Force instruction on reasonable doubt. That instruction includes the following sentence: "If, based on your consideration of the evidence you are firmly convinced that the accused is guilty of the offenses charged, you *must* find him guilty." (Emphasis added). Appellant made no objection to this instruction at trial. On appeal Appellant now argues that the instruction—particularly its use of the word "must"—was erroneous.

It is the military judge's duty to properly instruct the members at trial. *See United States v. Quintanilla*, 56 M.J. 37, 83 (C.A.A.F. 2001). A military judge's decision to provide an instruction is reviewed for an abuse of discretion. *United States v. Maxwell*, 45 M.J. 406, 424 (C.A.A.F. 1996). However, "[t]he propriety of the instructions given by the military judge is reviewed de novo." *Quintanilla*, 56 M.J. at 83. Moreover, where the defense has made no challenge at trial to the instruction contested on appeal, the matter has been forfeited absent plain error.[7] *See* R.C.M. 920(f). If we find error, we must then determine whether the error was harmless beyond a reasonable doubt. *United States v. Medina*, 69 M.J. 462, 465 (2011).

The language used by the military judge in Appellant's case is—and has been for many years—an accepted reasonable doubt instruction used in Air Force courts-martial. *See, e.g.*, *United States v. Sanchez*, 50 M.J. 506, 509–10 (A.F. Ct. Crim. App. 1999); *see also United States v. Gibson*, 726 F.2d 869, 874 (1st Cir. 1984) (upholding similar language). It was in fact offered by our superior court as a suggested instruction. *United States v. Meeks*, 41 M.J. 150, 157 n.2 (C.M.A. 1994) (citing Federal Judicial Center, Pattern Criminal Jury Instruction 17–18 (1987)). We do not find the military judge committed error, plain or otherwise, in giving the instruction.

*Conclusion*

The findings and sentence are correct in law and fact, and no error materially prejudicial to the substantial rights of Appellant occurred. Articles 59(a) and 66(c), UCMJ, 10 U.S.C. §§ 859(a), 866(c). Accordingly, the findings and sentence are **AFFIRMED**.



FOR THE COURT

LEAH M. CALAHAN
Clerk of the Court

---

[7] Although we recognize that the rule speaks of "waiver," this is, in fact, forfeiture. *United States. v. Sousa*, 72 M.J. 643, 651–52 (A.F. Ct. Crim. App. 2013).