# UNITED STATES NAVY–MARINE CORPS COURT OF CRIMINAL APPEALS

_____

### No. 201600075

_____

### UNITED STATES OF AMERICA
Appellee

v.

### ALEXANDER C. OUILLETTE
Lance Corporal (E-3), U.S. Marine Corps
Appellant

_____

Appeal from the United States Navy-Marine Corps Trial Judiciary

Military Judge: Lieutenant Colonel E.A. Harvey, USMC.
For Appellant: Captain Bree A. Ermentrout, JAGC, USN.
For Appellee: Lieutenant Commander Justin C. Henderson, JAGC, USN; Lieutenant Taurean K. Brown, JAGC, USN;

_____

Decided 16 August 2016

_____

Before FISCHER, RUGH, and CAMPBELL, *Appellate Military Judges*

_____

**This opinion does not serve as binding precedent, but may be cited as persuasive authority under NMCCA Rule of Practice and Procedure 18.2.**

_____

RUGH, Judge:

A military judge sitting as a general court-martial convicted the appellant, pursuant to his plea, of one specification of aggravated assault with a dangerous weapon or other means or force likely to produce death or grievous bodily harm, in violation of Article 128, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 928. The military judge sentenced the appellant to three years' confinement, forfeiture of all pay and allowances, reduction to pay grade E-1, and a dishonorable discharge. The convening authority (CA) approved the sentence and, pursuant to a pretrial agreement (PTA), suspended all confinement in excess of twenty-four months.

Upon review, we specified one issue: did the appellant receive the effective assistance of counsel in his post-trial representation when trial defense counsel requested relief outside the authority of the convening authority to grant? After considering the pleadings and an affidavit from trial defense counsel provided pursuant to *United States v. Lewis*,[1] we find no merit in the specified issue.

## I. BACKGROUND

On the evening of 17 April 2015, the appellant returned to his residence on board Marine Corps Base Camp Pendleton, California, where he lived with his wife, K.O. After a heated argument, he placed K.O. in a sleeper hold, threw her to the ground, strangled her, and repeatedly struck her in the head with a saucepan. K.O. received significant wounds to her head which bled profusely. When K.O. attempted to escape, the appellant caught her and strangled her again. K.O. finally escaped and crawled to a neighbor's residence where she was able to contact authorities. Subsequently, the appellant admitted to strangling and beating K.O. with a saucepan. The bent saucepan was found at the residence.

The appellant pleaded guilty pursuant to a PTA, which provided in part that a punitive discharge "[m]ay be approved as adjudged."[2] The military judge awarded a dishonorable discharge. In a post-trial clemency filing, trial defense counsel made a single request: that the CA "disapprove the dishonorable discharge and award a bad conduct discharge in its place."[3]

## II. DISCUSSION

### A. Clemency powers of the CA

Formerly, a CA could reduce all or any part of a court-martial sentence as an act of clemency.[4] However, the National Defense Authorization Act for Fiscal Year 2014 (FY14 NDAA)[5] amended Article 60(c)(4), UCMJ, to limit the CA's authority to effect sentences for all but the most minor kinds of offenses committed on or after the effective date of 24 June 2014. *See United States v.*

---

[1] 42 M.J. 1, 5 (C.A.A.F. 1995).

[2] Appellate Exhibit 11 at 1.

[3] Request for Clemency of 10 Nov 2015 at 1.

[4] Article 60(c)(2), UCMJ, 10 U.S.C. § 860 (2012) ("The convening authority . . . in his sole discretion, may approve, disapprove, commute, or suspend the sentence in whole or in part.").

[5] Pub. L. No. 113-66, 127 Stat. 672 (2013).

*Roller*, 75 M.J. 659 (N-M. Ct. Crim. App. 2016) (discussing the application of the modified Article 60 on cases involving "straddling offenses," offenses occurring both before and after the effective date).

An affected offense—referred to as an "other than qualifying offense"—meets any one of the following criteria: (1) it was charged under Article 120, sections (a) or (b), Article 120b, or Article 125, UCMJ; (2) its maximum authorized punishment exceeds two years; (3) the adjudged sentence for its conviction includes confinement for more than six months; or (4) the adjudged sentence for its conviction includes a punitive discharge. Article 60(c)(3)(D), UCMJ.

For all cases with "other than qualifying offenses," Article 60(c)(4) now provides:

> (A) Except as provided in subparagraph (B) or (C), the convening authority . . . may not disapprove, commute, or suspend in whole or in part an adjudged sentence of confinement for more than six months or a sentence of dismissal, dishonorable discharge, or bad conduct discharge.
>
> (B) Upon the recommendation of trial counsel in recognition of the substantial assistance by the accused [or]. . . .
>
> (C) If a pre-trial agreement has been entered into by the convening authority and the accused . . . . the convening authority . . . shall have the authority to approve, disapprove, commute, or suspend a sentence in whole or in part pursuant to the terms of the pre-trial agreement . . . .

However, for both "qualifying" and "other than qualifying" offenses, the CA may still "disapprove, commute, or suspend, in whole or in part, any portion of an adjudged sentence not explicitly prohibited," which includes any "[r]eduction in pay grade, forfeitures of pay and allowances, fines, reprimands, restrictions, and hard labor without confinement . . . ."[6]

The appellant assaulted his wife on 17 April 2015 after the effective date of the change. As trial defense counsel acknowledged, the terms of the PTA did not require the CA to reduce the dishonorable discharge,[7] nor did the

---

[6] Exec. Order. No. 13,696, 80 Fed. Reg. 35,812-13 (22 Jun 2015).

[7] The record contains the following discussion by the military judge regarding the PTA: "So, it appears that the punitive discharge that was adjudged may be approved. There was, it looks like, as part of the initial offer from the defense, a provision to have only the BCD approved, but everybody has – that was lined out, and it looks as though we have everybody's signatures, that that does not apply." Record at 63. Trial defense counsel and the appellant concurred. *Id.*

3

"substantial assistance exception" in Article 60(c)(4)(B), UCMJ, apply.[8] Thus, the CA could not lawfully grant the appellant's request to commute the adjudged dishonorable discharge to a bad- conduct discharge.

The CA's discretion to modify the adjudged sentence was limited to action on the appellant's reduction in pay grade or forfeiture of pay and allowances.[9] As a result, we must evaluate whether appellant received effective assistance of counsel in the post-trial process when his counsel requested relief outside the CA's authority.

## B. Ineffective assistance of counsel

"By virtue of Article 27, UCMJ, 10 U.S.C. § 827, as well as the Sixth Amendment of the Constitution, a military accused is guaranteed the effective assistance of counsel." *United States v. Scott*, 24 M.J. 186, 187-88 (C.M.A. 1987) (citations omitted). This includes the right to effective assistance of counsel during the post-trial clemency process. *See United States v. Cobe*, 41 M.J. 654, 655 (N-M. Ct. Crim. App. 1994) ("One of counsel's fundamental duties after trial is to consider and submit, if appropriate, a petition for clemency to the convening authority on his client's behalf. . . . This duty is important because an accused's best hope for sentence relief after trial [is] the convening authority." (internal citations omitted)).

In reviewing claims of ineffective assistance of counsel, we "look at the questions of deficient performance and prejudice *de novo*." *United States v. Datavs*, 71 M.J. 420, 424 (C.A.A.F. 2012) (citation and internal quotation marks omitted). However, we "'must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.'" *United States v. Tippit*, 65 M.J. 69, 76 (C.A.A.F. 2007) (quoting *Strickland v. Washington*, 466 U.S. 668, 689 (1984)). Thus, the appellant bears the burden of demonstrating (1) that his counsel's performance was deficient to the point that he "was not functioning as the 'counsel' guaranteed by the Sixth Amendment" and (2) that the deficient performance prejudiced the defense. *Id.* (citations and internal quotation marks omitted).

"We do not measure deficiency based on the success of a trial defense counsel's strategy, but instead examine whether counsel made an objectively reasonable choice in strategy from the available alternatives." *United States v. Akbar*, 74 M.J. 364, 379 (C.A.A.F. 2015) (citations and internal quotation

---

[8] Appellee's Response to Court Order filed on 18 Jul 2016; Trial Defense Counsel's Declaration of 14 Jul 2016 at ¶ 2.

[9] The CA was also prohibited from disapproving the findings. *See* Art. 60(c)(3), UCMJ.

marks omitted). "[S]trategic choices made by trial defense counsel are 'virtually unchallengeable' after thorough investigation of the law and the facts relevant to the plausible options." *Id.* at 371 (quoting *Strickland*, 466 U.S. at 690-91).

"[B]are allegations" of "inadequate representation for failure to exercise . . . post-trial rights" are not "seriously entertained" by this court, "without the submission of an affidavit by the appellant stating how counsel's inaction contrasted with his wishes." *United States v. Starling*, 58 M.J. 620, 622-23 (N-M. Ct. Crim. App. 2003). Where trial defense counsel, by contrast, submits an affidavit, and "[t]he factual assertions in the affidavit provide a 'reasonable explanation for counsel's actions,'" this heavily "weighs against the appellant overcoming the presumption of competence" of counsel. *United States v. Wilkerson*, 2013 CCA LEXIS 367, at *7 (N-M. Ct. Crim. App. 2013 April 30) (quoting *United States v. Grigoruk*, 52 M.J. 312, 315 (C.A.A.F. 2000)).

The appellant asserts that trial defense counsel was ineffective because, "by requesting unauthorized relief" in clemency, he "undermined his credibility" and appeared to be "unaware of the change in the law."[10] However, the appellant did not submit an affidavit stating how this request violated his wishes, if at all.

By contrast, trial defense counsel's affidavit explained that he "made the *tactical decision* to ask for relief beyond the scope of Article 60 with the belief that [he] might either obtain the relief sought, or receive as a concession more moderate relief."[11] Additionally, he sought to preserve the appellant's opportunity for other post-trial relief should the Article 60 amendments subsequently be "reversed, relaxed or found unable to withstand judicial review[.]"[12] Trial defense counsel "took this course of action only after consultation" with his supervisors.[13] Trial defense counsel further explained that "[r]estoration of rank or protection from automatic forfeiture[s]"—two types of clemency which the CA could have granted—"were not meaningful to" the appellant, because of appellant's marital situation.[14]

Whether we would or would not pursue the same strategy if we were in trial defense counsel's shoes, we cannot say his path here was objectively

---

[10] Appellant's Brief of 17 May 2016 at 4-5.

[11] Trial Defense Counsel's Declaration at ¶ 3 (emphasis added).

[12] *Id.* at ¶ 7.

[13] *Id.* at ¶¶ 3 and 8.

[14] *Id.* at ¶ 9.

unreasonable, particularly when there is no indication that it was inconsistent with the appellant's wishes. Thus, we decline to classify trial defense counsel's request in clemency as deficient performance, and we need not reach the issue of whether appellant's rights were prejudiced.

## III. CONCLUSION

The findings and sentence as approved by the CA are affirmed.

Senior Judge FISCHER and Judge CAMPBELL concur.

For the Court



R.H. TROIDL
Clerk of Court